OSAGE WATER COMPANY, et al., Plaintiffs–Respondents,

v.

GOLDEN GLADE LAND OWNERS ASSOCIATION, INC., et al., Defendants–Appellants.

No. SD 28587.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 20, 2008.

Elizabeth A. Marr, Lone Jack, for Golden Glade Land Owners Association, Inc. and Debra J. Williams.

Gregory D. Williams, Sunrise Beach, pro se.

Gary V. Cover, Clinton, for Osage Water Company.

Keith R. Krueger, Jefferson City, for Missouri Public Service Commission.

Faye M. Coultas, Osage Beach, for Eagle Woods Home Owners Association, Inc., no brief filed.

NANCY STEFFEN RAHMEYER, Judge.

The parties and associations in the underlying action are numerous and their identification is unnecessary for a resolution of this appeal. Suffice it to say, two of the principals are Gregory D. Williams and Debra J. Williams, whom we shall identify collectively as "Appellants" and individually by their first names, were participants in some fashion in Osage Water Company ("OWC") and most of the corporations involved in the contracts and disputes between the parties. Respondents in this appeal are the Missouri Public Service Commission ("the PSC") and OWC.[1] The trial court found that a series of three agreements entered into by the various parties in 1998 and 1999 were part of an "integrated plan" for the development and operation of a wastewater treatment facility to benefit property developed by Appellants. In the agreements, Appellants agreed to convey property to OWC to obtain the necessary permits for a sewage treatment facility. The trial court further found that OWC fully performed its obligations under the agreements but that Appellants had not; it ordered Appellants to convey to OWC the real estate on which the wastewater treatment plant sits. Additional facts will be set forth as are necessary for a resolution of the points.

Appellants argue trial court error because (1) substantial evidence indicates the integrated plan had been abandoned, (2) substantial evidence shows that there was a subsequent inconsistent document which superseded the prior agreements or is deemed the most recent and integrated contract between the parties, (3) there was no adequate legal description and no evidence by which the court could make a finding such that the contracts are enforceable under the Statute of Frauds, (4) no evidence supports the finding that OWC performed its obligations, and (5) Debra was not a party to two of the three agreements and, thus, under no valid or enforceable contract which obligated her to convey her interest in the property. We find no error and affirm the judgment.

■■■ Initially, we note that this was a court-tried case, thus the judgment will be affirmed unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Crabby's Inc. v. Hamilton*, 244 S.W.3d 209, 211 (Mo.App. S.D. 2008). This Court accepts as true the evidence and all reasonable inferences therefrom in favor of the prevailing party and we disregard the contrary evidence. *Harrison v. DeHeus*, 230 S.W.3d 68, 74 (Mo.App. S.D.2007). We defer to the trial court in judging the credibility of witnesses and resolving conflicting evidence. *Id.* The trial court is in a better position to judge the credibility of witnesses and the persons directly in regard to factual

1. Appellants are no longer involved in the management of OWC. Pursuant to the order of the Circuit Court of Camden County, Gary Cover was appointed receiver of OWC and authorized the commencement of the lawsuit in the name of the corporation.

issues; we defer to the trial court when there is conflicting evidence, even if there is evidence which would support a different conclusion. *Id.*

■ For ease of discussion, we will commence with Appellants' third point, in what appears to be a challenge to the judgment that there is no valid legal description in the contracts so that the contracts were unenforceable under the Statute of Frauds. It appears that Appellants actually bring three separate complaints: (1) that there was an inadequate legal description in the first contract, (2) that no evidence supports the court's judgment of the property to be conveyed, and (3) that the contracts are unenforceable under the Statute of Frauds. We are at a loss to discern Appellants' point because their argument cites to only two cases, one for the proposition that the absence of a legal description is not fatal under the Statute of Frauds so long as the property can be identified with reasonable certainty with the aid of the data supplied by the instruments and a consideration of the attending circumstances. The second case is cited for the proposition that where a tract of land within a larger amount of acreage could not be reasonably identified it rendered a legal description insufficient to provide required notice of a tax sale. Although it is far from clear, we shall treat Appellants' third point as a complaint that substantial evidence does not support the judgment as to the legal description of the property.

Keeping in mind our standard of review, the court found that the combined agreements formed the contract or integrated plan. That finding has not been challenged by Appellants. As a result, we accept the fact that the agreements provided that Appellants would "contribute" to OWC a suitable site for the sewer located in Section 6, Township 39 North, Range 16 West, to the northwest corner of Appellants' property. Evidence was admitted at trial that Appellants filed a plat with the Camden County Recorder of Deeds that set out tract C as a "utility tract." It is that very same property where the sewer facility that was at issue is located. Additionally, an exhibit admitted at trial contained the very same legal description. Finally, there was testimony from a witness for the PSC regarding the location and the amount of property needed for the sewer treatment facility. Substantial evidence supports the judgment regarding the legal description of the property. Point III is denied.

■ Turning now to Appellants' fifth point, Appellants complain that Debra was not a party to two of the three contracts which the court found to be part of an integrated plan and, therefore, she could not be ordered to convey her interest in the sewer facility. This point, likewise, has no merit. There is no need to go further with the convoluted interests both Appellants had in the subsequent corporations and associations, who were parties in the other two agreements, because Debra did sign the first agreement in 1998 and it was in that agreement that she clearly agreed to convey the site upon which the sewer treatment plant was to be and has been built. Point V is denied.

■ We turn next to Appellants' fourth point, which claims that OWC did not fully perform its obligations under the agreements because it failed to obtain a sewer permit in a timely fashion. Appellants cite to evidence which claims that a facility was built by funds from Gregory and claims there was "an extensive delay." Appellants do not give us the benefit of how much time was involved in any "delay" or why that time was unreasonable or was a failure to comply with the contract. We, however, accept as true the evidence which

supports the judgment. Specifically, that evidence indicates that though the contracts do not impose any deadlines on OWC, OWC obtained a Certificate of Convenience and Necessity from the PSC seven months after the 1998–1999 agreements. No evidence was presented that this was unreasonable under the contract. Appellants do not claim any other failures on the part of OWC to fully perform its obligations under the contract. Point IV is denied.

■ Lastly, we turn to Appellants' first two points. As noted, the trial court found an integrated plan evidenced by the three agreements entered into in 1998 and 1999. Appellants' first and second points are related in that they aver that the integrated plan was either abandoned by or modified by a subsequent lease agreement, which was entered into in 2003 and provided that OWC pay rent to Appellants. The 2003 lease did not require Appellants to convey the property to OWC and, therefore, Appellants argue that it is an admission that Appellants are the proper owners of the property on which the sewer treatment plant sits. Appellants conclude that the subsequent agreement was inconsistent with the integrated plan and therefore supersedes it.

Respondents counter that the lease agreement resulted from a lawsuit that the PSC and Department of Natural Resources ("DNR") filed against OWC over spills that occurred in the sewer system due to an overload of the system. An issue arose between the governmental plaintiffs and OWC about OWC's right to be on the premises since legal title to that property was still held by Appellants. The regulatory agencies urged either a transfer of the property to OWC or a lease. The parties agreed upon a lease to resolve the matter with the regulatory agencies. Respondents note that Gregory controlled OWC at the time of the settlement and, had OWC brought suit against Appellants for specific performance of the original contract, it would have been Gregory authorizing a suit against him and Debra for legal title. Respondents note that the whole point of the underlying lawsuit was that OWC had equitable title while Appellants had the legal title. Respondents also note that the 2002 shareholder meeting notes of OWC's attempt to convey to Gregory its interest in the sewer facility in exchange for a reduction of legal fees is an admission that OWC actually owned the facility.

■ Abandonment of a contract " 'must be made to appear affirmatively by the party asserting it, and ... proof of abandonment must be made by clear, unequivocal and decisive evidence.' " *McBee v. Gustaaf Vandecnocke Revocable Trust,* 986 S.W.2d 170, 173 (Mo. banc 1999) (*quoting Miran Inv. Co. v. Medical West Bldg. Corp.,* 414 S.W.2d 297, 303 (Mo.1967)). Furthermore, "[a] writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." *Cure v. City of Jefferson,* 380 S.W.2d 305, 310 (Mo.1964) (*quoting* Restatement (First) of Contracts § 235 (1932)). Although Appellants cite to evidence that supports their position, we take the evidence in the light most favorable to the court's decision. *Harrison,* 230 S.W.3d at 74.

First, it is significant that the first three documents which formed the integrated plan to build a sewer facility were executed within three months of each other and drafted by Gregory for the benefit of Appellants. Second, the court found that OWC fully performed its obligations under the plan. We have determined that finding is supported by substantial evidence. Next, it was within the court's province to judge the credibility of the witnesses and

determine whether the parties abandoned the initial plan by "mutual implied consent." The court did not make such a finding. Furthermore, the evidence at trial indicated that the lease agreement came about as a result of a lawsuit against OWC by the DNR. The president of OWC at the time testified he executed the lease because "a bad settlement's better than a good lawsuit." The trial court could reasonably find that the lease was a method to resolve the dispute to the DNR's satisfaction so that OWC could continue to provide sewer service to its customers but was not any concession that OWC did not have a claim to the legal and equitable title of the property on which the sewer system was located. The court was free to infer that the attempt by Gregory to obtain the rights to the sewer system to offset his attorney fees was an admission that Gregory did not have the full rights to the property. In the minutes of the 2002 shareholder meeting, Gregory acknowledged if there was an attempt to convey the treatment facility to Gregory that any "sale of assets would require approval of the [PSC]." There was no attempt to get approval from the PSC. Finally, it was OWC that had the permission from the PSC to provide sewer service and that actually provided the service. Substantial evidence supports the trial court's finding that the subsequent lease was not an abandonment or a modification of the original contract. Points I and II are denied.

The judgment is affirmed.

LYNCH, C.J., BURRELL, P.J., concur.